Good morning and welcome to the Ninth Circuit. Today, Judge Thomas and I are very thankful for Judge Oliver to join us from the Northern District of Ohio. Thank you very much for the help this week. We have a number of cases that are submitted. They are Barbosa-Gomez v. Garland, Salguero-Alvarez v. Garland, and Garrindo-Ruiz v. Garland. Those cases are submitted. We have three cases today that we will hear oral argument on. The first is Good morning. If it may please the Court, I would like to reserve five minutes for rebuttal. Very well. Make sure you keep track of your time. We will try to help you out, but keep track of your time. Certainly. Your Honor, I am aware that by now the Court has read the briefs and the clerks have circulated bench memos. You do not want me to just reiterate arguments that are brought in the briefs, so I will limit myself to raising a couple of additional points. One is, after the briefing closed, the Seventh Circuit decided a case. It was an appeal of an injunction on a denial of preliminary injunction on a cannabis licensing case. The Seventh Circuit did not abstain in that case, but ruled abstention was not raised. However, abstention was not raised in Peridot Treaty either. The Court raised it sua sponte. There was another case which has limited value in New York. The District Court enjoined the entire State of New York's cannabis licensing program. That was appealed to the Second Circuit. While that was on appeal, the government filed a motion to stay the injunction. The Court denied that motion. They modified the injunction left in place, and after that, the party settled. So the Second Circuit never went all the way through to deciding the appeal, so it has a limited value. But to date, no circuit has abstained in the cannabis licensing. Well, let's see. The District Court in this case did abstain, and could you point to what the District Court's thinking was, which particular doctrine they found closest matched on the abstention? Well, Your Honor, the Court was transparent that this didn't fit into any established bucket. They did it based on two things that I believe were the keys. One is they said that the plaintiff was asking the Court to open Sacramento to out-of-state cannabis sellers, which for the reasons I discussed in the brief was not correct. It's already open. The second is they said that there should be two things. One, if there were state challenges, which for the reasons in the briefs, we don't believe there are. And secondly, the Court said that the State Court should take first pass at the Dormant Commerce Clause challenge. So if it didn't fit into any one particular abstention doctrine, then didn't it lack the discretion under the Dormant Commerce Clause to abstain? Your Honor, I agree with that. So are there any, refresh me, at the time of the briefing, there were no state proceedings. Is there any update on that? In this case in particular? Yes. No, the entire action has been stayed, so no proceedings at this time. When you say stayed, are you talking about the federal action, or is there anything pending in state? No, nothing has been taken. Nothing filed in state? No, and in fact, I think if we were to file in state court, we'd have to take a look at the statute of limitations. I'm not sure that's even available at this point. Do you think there are any circumstances where a kind of an abstention doctrine is kind of a penumbra, you know, that kind of thing, where it's not really abstention, but in terms of a recognized doctrine, but there is some discretion. Is that ever, is that ever possible? Your Honor, I don't believe at the district court level. The abstention doctrines have to come from somewhere, but they're generally the Court of Appeal or Supreme Court. As the district court acknowledged, there is a virtually unflagging responsibility to exercise jurisdiction, and I would point out that an economic protectionism case such as this is exactly the kind of case that should not be in front of an elected state court judge. A Michigan individual does not vote for Sacramento judges, but a Michigan resident's Dormant Commerce Clause rights need to be protected. Well, I think, you know, abstention doctrines do emanate from the district courts and the circuit courts, because the Supreme Court doesn't make it up on its own. So I think what the district court was doing here, it seems to me, was to saying, look, it doesn't fit neatly into any existing doctrine, but I think there should be an abstention doctrine based on comedy and the fact that there are significant state interests here. That's the way I read it. Your Honor, that is correct. However, I would point out the state interest, I think the district court was incorrect on that. The district court talked about excluding out-of-state sellers. As we explained in the brief at length, the state cannabis licenses are already open out-of-state. This is about the 10 remaining retail licenses, and in fact, it's only about 51% ownership. In the initial pass, a current or former Sacramento resident has to receive the license. They can then sell as much as 49% to any person anywhere in the country. So when the state said that this is about excluding out-of-state sellers, that is not correct. And again, I point out, this case has nothing to do with cannabis products crossing state line. This is limited to economic investment, which is already allowable. At the state level, there are no restrictions whatsoever. And at the city level, there are no restrictions on cultivation, on manufacturing, on distribution, on 30 out of the 40 retail licenses, or on 49% of the remaining 10 licenses. It's solely about who will get those 10 licenses in the first instance. I also point out that Amicus Brief, who filed an Amicus Brief here that said there would be a period of horribles if the Dormant Commerce Clause did not apply and the city is not allowed to exclude out-of-state sellers. They themselves filed letters with the Attorney General in support of opening California's borders to cannabis products crossing state line, not just investment, which is already allowed. Again, that is not raised in this case, but that is where things are going. And I think Amicus is disingenuous when they say that it would be a problem for the state or the city if the Dormant Commerce Clause applies. Part of the District Court's concerns seem to be in the tension between federal and state law with respect to cannabis. And I believe, if I recall correctly, the District Court said, I'm not sure there's a market for an illegal product that would be illegal, an interstate market for a product that would be illegal under federal law. What do you make of that? Your Honor, that's been addressed by the Supreme Court. The first one I'm aware of was the wheat case where a farmer grew his quota and separately grew an amount just for his own livestock. And the court said, by not participating in a market, you are affecting the market. That was a legal market, but then in, I believe it's Gonzales v. Raich, the Supreme Court said that even four plants grown by a person for personal medical use by a cancer patient affects the interstate commerce. And cannabis, even though it's an illegal market. I point out again, though, Your Honor, that this case is not about products crossing state lines. This is solely about investment from out of state. Correct. So I don't think the appellee argued Thibodeau, but the Amicus did argue that he thought Thibodeau applied here. Can you briefly discuss that? I'm sorry, Your Honor, I couldn't quite hear you. Could you please repeat that? Yes. I don't think the appellee argued that Thibodeau abstention applied, but I think the Amicus did argue that. Can you quickly just respond to that? Your Honor, I don't have the Thibodeau in my notes precisely, but the two main doctrines were, one, if there is a sensitive state policy, here, you know, this has nothing to do with whether cannabis is going to be sold, where it's sold, the taxation, the cost of it, the distance between. This is solely who is going to be a minority owner of the license. I would acknowledge, I don't think people care when they go to McDonald's, as long as it's a franchise. They just care about getting their hamburger. I don't think there's a sensitive state policy here, since this doesn't affect the cannabis sales itself. The other doctrine comes from the Pullman line, where the issue is if something would be mooted by, if the constitutional challenge would be mooted by a state law challenge, and here, as you showed in the brief, there is no state law challenge. The government would like me to run on a fool's errand about two claims that are brought under a rational basis review, and we've never said there's no rational basis for what the state's doing, but this cannot survive constitutional scrutiny under a Dogmatic Commerce Clause challenge. Well, in Thibodeau, which is not relied on very much with the courts, but even though it's been on the books since 59, the Supreme Court approved a district court's decision to abstain, where state law apportioning power between the city and the state was uncertain, and any decision by the federal district court would affect state sovereignty. That's the Thibodeau doctrine. Yes, Your Honor, I would have to go back and review the facts. I think that may be the case where the government had set up a different scheme for appeals on something to do with utility licensing, but whether I'm right on that or not, you're asking whether it's a sensitive state issue, and I believe it is not for the reason I've said, which is, first of all, if I'm going to distinguish between the state and the city, this has nothing to do with state law whatsoever. This has no effect on anything by the state of California, and as far as the city goes, again, this won't affect anything customer-facing or tax-facing or anything. This is simply about minority ownership of 10 licenses. Your Honor, I'm about at the time I wish to reserve. I just want to make a couple last points. I realize it has to be tempting to just think, maybe I can wait out the clock, the federal government will make it legal and moot this. I would ask the court to not do that. Everybody thought cannabis would be federally legal before the 2020 election. When that didn't happen, they thought certainly after. Right now, HHS has all but guaranteed that they're going to reschedule cannabis from Schedule 1 to Schedule 3, which would take—that movement, I think, would take political pressure off for the election, so I think it's far from certain that federal legalization is coming anytime soon, and we don't want to wait on our rights for an indeterminate amount of time. Counsel, do you want to reserve the rest of your time? I do. Thank you. Very well. Thank you. Mr. Rosacker? Good morning. Good morning. Lee Roystacker for the appellees. Excuse me. Before I start into sort of what I planned to argue today, I want to make one clarification, I think, in the briefing with respect to the claims that could be brought in state court. The briefing sort of indicates that it might be limited to constitutional challenges, but there certainly are other challenges that could be brought in state court. Administrative mandate, traditional mandate, challenging the authority of the city under the state regulatory scheme to enact residency restrictions in its program. So I just wanted to make that clear. I was just throwing out, or we were just throwing out two potential examples, and I think it's broader than that. But here the district court really—I mean, I thought there was a very thoughtful examination of all the different doctrines that could potentially apply, and I think the conclusion was that none of them really applied. So at that stage, when not one particular doctrine does apply, do we—can we then step away and say, sorry, we're going to abstain, or aren't we required to, in fact, answer the question? I do think home and abstention applies, but let's assume that it doesn't. There's no precedent from the Supreme Court or this court saying that a district court must categorically not abstain if a case doesn't fit squarely or neatly in any of the recognized or named abstention doctrines. I mean, they only become named after the Supreme Court names them. So at some point, there was always an abstention decision. Counsel, your last statement I'm not so sure squares with Fireman Fund. There, the court held that the district court has no discretion to abstain in cases that do not meet the requirements of the abstention doctrine. I guess I don't understand your previous statement. Well, I believe what that case says is the abstention doctrine relied on. Right. But, I mean, I think if you want to shift your argument a bit, why should we endorse a new abstention doctrine if that's what we're doing when we have case law that says that the district courts have an unflagging duty to decide cases? Sure. Well, again, the Supreme Court and this court have said that abstention doesn't have to necessarily fit into the pigeonholes. Correct. So why should we endorse a new doctrine? Well, I think… What's the compelling reason in this case? Well, the compelling reason in this case is Sacramento has instituted a program, an equity program, to try to alleviate the past disproportionate prosecution or penalization of marijuana laws when it was illegal within the city. And by doing that, they're trying to get a segment of the population involved in the cannabis business. Well, let me just follow up. Do you have any case in which this circuit has affirmed a district court's decision to abstain outside of the traditional abstention doctrines? I don't think that there is a case. But I will note that the Gilbertson decision and Embank decision talked about how it's not a pigeonhole. What's important, the key is the balance between the parallel systems of government and to try to preclude or try to alleviate the tensions that might exist between the federal courts and state and local legislatures. But I will concede I don't believe there is a case that has ever proffered the argument or addressed the argument that's really proffered here, is whether it's categorically an abuse of discretion or an error of law to rely on an abstention doctrine or to abstain where it doesn't fit squarely within the abstention doctrine's holes or elements. I will say in Noel, this court's case, the quote is, a district court can stay proceedings based on comity even where none of the abstention doctrines require that it do so. So there is certainly in this court's decisions and in the Supreme Court's decisions a recognition that there may be a case where abstention should be applied, but it doesn't fit neatly in any of the established doctrines. Did the First Circuit err in its decision in Northeast Patients Group to decide the issue, that same issue that's being essentially presented here today? Well, I don't know if they erred, and I'm assuming you mean... No, they went to the merits. They didn't address the abstention, but they actually went to the merits. Correct. Were they wrong? According to the dissent, they were wrong. But what about the dissent? Well, I think there is a problem. There's a fundamental conflict between the Controlled Substances Act and what the states are trying to do in terms of marijuana. If you're asking me if it was a Commerce Clause violation or a violation of the Dormant Commerce Clause, of course, that's not the issue we're here for today. But I would say that there's a justification apart from economic protectionism that underlies what the city was trying to do here. And in reality, it's 10 out of 40 storefront dispensaries that have two classifications out of the five in the system that have a residency requirement. Out-of-state people are free to participate in every other aspect of Sacramento's marijuana or cannabis distribution, sale, production scheme. Right. But to my question, though, your answer is that there's a tension, but they were wrong? Well, in my opinion, they were wrong. I don't think they should have decided the question. Well, strike that. I think that it does not violate the Dormant Commerce Clause, at least Sacramento's. I'm not exactly entirely familiar with the—or I can't recall the exact parameters of the—I think it was—I don't remember the state. Maine? Maine, maybe. I don't remember their entire scheme. But, you know, there could be different results based on different schemes set out by different states or localities and depending on what the reason was for them. So you think Pullman abstention applies. Tell me why. I do. Well, I don't think there's any question that the constitutional claim here touches on a sensitive area of social policy. I think that's pretty clear. So why is the state best suited? Why is the state best suited to address this? Well, I think that if a court is going to—well, it's a matter of sovereignty, I think, comedy and federalism. You know, states are able to legislate and govern at a local level, local governments at a local level, state governments at a state level. And to me, if a court is going to totally undo Sacramento's attempts to create equity in the marijuana trade, it should be a state court. I think a federal court doing that is exactly the tension and is exactly the tension that comedy and federalism seek to try to avoid. And it's simply, you know, it's a stay. It's not a dismissal. Plaintiff always has the opportunity to come back. Which claims based on state law do you think, if they were decided by a state tribunal, would obviate the need to decide the federal issue? What federal question? Well, apart from any particular claim, clearly any claim that succeeds in invalidating the residency requirement in Sacramento's scheme obviates the need to come in and say it violates the Dormant Commerce Clause in federal court, because it wouldn't exist anymore. Yeah, but you've got to have something specific in mind. Well, the ones that I set forth in my brief were the constitutional claims under the California Constitution. But I do think there are others. The reply brief, for instance, sort of takes the, it seems to take the tone of there's no state statutes that set out any residency versus non-residency requirement. It almost seems like the argument is that Sacramento wasn't allowed to do that, because the state didn't set up that sort of potential discrepancy or potential categorization. But if we follow this analysis, what you would be asking, though, is that litigants sort of resolve any and all potential state law claim issues, then at some point address the federal issues and come back to federal court. Is that what you're saying? Well, we're talking in the context of this case, correct? Correct. Well, I mean, they certainly could resolve or litigate the Dormant Commerce Clause in state court. They don't have to, but that's certainly an option. But why are they best suited to address that than the federal court? Well, I don't think the test is whether they're best suited to address the Commerce Clause claim. They're best suited to address whether the residency requirement is legal or is appropriate under state law. And the purpose is simply it's not to— How does that affect the Dormant Commerce Clause question? Well, it's not—the idea of the Pullman abstention is not to resolve the constitutional question in state court necessarily, one-on-one, or, you know, exactly the same. It's whether it will narrow or eliminate the question. And my point is simply if they go to state court and make a challenge to the residency requirement, whatever the challenge is based on, if that's successful and a state court says, you can't have a residency requirement, well, then the Dormant Commerce Clause challenge in this case is essentially moved. There's nothing to challenge. Right, but there's nothing pending in state court. That's the problem with this case. Yeah, but— I mean, basically, I think you're arguing for an exhaustion requirement. No. Well, you kind of are. I don't think I am, but Pullman abstention doesn't require a case to be pending in state court. It does require uncertain state law. What's uncertain about state law? I think that whether or not a residency requirement in a marijuana scheme is uncertain because it hasn't been addressed by any court. So they're going to be forced to raise that question? I believe so. I mean, I think that's the purpose of the abstention doctrine is to deal with these things in state court if it potentially eliminates the need for a federal court to invalidate something a state legislature or a local legislature has done. So there's nothing pending. How long is the stay going to last if we agree with you? Years? Well, I don't think the district court would be entirely happy with it lasting years. I mean, the order was that we were supposed to report, I think, every 150 days or every 160 days, but I kind of assume that means after this court makes its decision. But my understanding is the district court wants plaintiffs or the appellants to try in state court. I mean— Give up the case they brought in federal court, essentially, for now, and then go down and raise some state law claims and issues that they had no interest in raising. That is correct. But, I mean, that happens in abstention cases all the time, particularly in Pullman abstention. You know, there are strategic reasons probably for some parties not to challenge in state court things they can challenge and then proceed to federal court. And, I mean, I think that's one of the purposes of the Pullman abstention, and the underlying theory behind all abstention doctrines is to alleviate the tension and to try to eliminate an unseemly-looking result of a federal court invalidating something that a state or local government has done under its sovereign powers. And if—one point I want to make, I only have a couple minutes left, but the assertion that's been made that there are no quote-unquote laws or regulations at issue here, it's sort of interesting to me. I mean, apart from the fact that at paragraph 25 in the First Amendment complaint, it alleges, quote, defendants enacted laws, close quote, that violate the Dormant Commerce Clause. But comedy and federalism don't require the issue to be directed specifically at an enacted statute, formal statute of regulations. It's about the recognition that state and local governments can self-govern. If there aren't any other questions, I'll submit. Thank you. Thank you, Counsel. Judge Mendoza asked about the tension between the CSA and the Dormant Commerce Clause. I would point out that the CSA, under the government's interpretation, essentially renders the appellant's constitutional rights a nullity. It just wipes the Dormant Commerce Clause away. To say that the Dormant Commerce Clause will have no effect until the CSA is modified is to say the CSA overrides the client's constitutional rights. I also want to point out that an abstention will leave the plaintiffs without a remedy. Right now, Washington State is holding an unconstitutional Dormant Commerce Clause, an unconstitutional cannabis licensing program. That one is going to be challenged shortly. A party cannot obtain monetary damages from a state. Why do you say that? Eleventh Amendment. Oh, I mean from the state itself, but your argument is with the city. It is in this case. I'm saying I know that the Washington State… Right, but I mean you have a remedy, but I'm gathering you're representing to us that you do not, on behalf of your clients,  Is that right? No, no, no, Your Honor. In this case… I know you're talking about Washington, but that's not this case. Right, in this case, the remedy, if the stay is in place, it will only be to seek damages afterwards, because I can't imagine, as a matter of equity, that the court is going to unwind the licenses years after they've been granted and redistribute them. As far as Pullman and state court challenges, you saw that the government cannot provide a state court basis. They said something effective. It would be a challenge to the residency requirement, whatever that would be. They had a chance at the district court in multiple briefs. They couldn't come up with one. They had a challenge here on the briefs. The only thing they could come up with was two rational basis claims that we have no intention of bringing. And here in court, they can't give any claim. In fact, Judge Oliver put it to them, what is a specific claim? And the specific claim is whatever that would be. One of the judges, I'm sorry, I've forgotten which one, brought up that it doesn't fit squarely within any current abstention doctrine. Does that mean the district court has no ability to abstain? I would point out that the district court's abstention in this case was based on a misunderstanding of both the facts and the state cannabis law, and we explained that in detail in the brief. But the district court was just flat-out wrong. They said that we are trying to open Sacramento's borders to out-of-state cannabis sales, and for the reasons we explained at length, that is not correct. And this has no effect on any provision whatsoever of California state law. It has no effect on any provision of Sacramento law. Sacramento doesn't have regulations. And the only effect is on the people who can put their applications in. So instead of 106 applications to review, Sacramento would have to review more. The council also said that it should be allowable because there is a compelling state reason to have the local residency restriction. I would point out that's on the substance. That's not an argument towards abstention. That needs to be brought at the district court. But the reason that they gave is they have a compelling state interest in rewarding people who were convicted of cannabis crimes in Sacramento. I don't concede that that's a legitimate purpose, but if it is, the Dormant Commerce Clause is clear. You don't get to pick your preferred way of solving that local purpose. You have to do it only if there is no other possible way. We gave plenty of examples in the brief of other methods they could have used. They chose this one. They decide we want to reserve our licenses for our local people, and they say, well, because we want to do that, that's a local purpose, and therefore we should be able to do it. But the Dormant Commerce Clause law is clear. You can prefer your local residence only if there is no other way to deal with that local purpose, and we gave examples in the briefs the way they could. Unless the court has other questions, I will submit. Any questions? Thank you, Your Honors. All right. Thank you. This case will stand submitted. Thank you, both counsel, for your arguments today.
judges: THOMAS, MENDOZA, Oliver